# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Demetrio De Los Santos-Santana<br>also known as<br>Ramon De Los Santos<br><br>Defendant. | Crim. No. 23-311 (GMM) |

## OPINION AND ORDER

Pending before the Court is Defendant Demetrio de los Santos-Santana's ("Defendant") *Motion to Dismiss Count One* ("Motion to Dismiss"). (Docket No. 15). Defendant moves to dismiss Count 1 of the Indictment alleging 18 U.S.C. § 922(g)(5) ("Section 922(g)(5)") is a facially unconstitutional restriction on a person's Second Amendment right to bear arms. For the reasons stated below, the Court **DENIES** Defendant's Motion to Dismiss.

### I.   BACKGROUND

The following factual allegations are taken from the Indictment and from motions filed by the parties. For the purpose of determining the present motions, the following facts appear to be undisputed.

On August 22, 2023, Homeland Security Investigations ("HSI") agents were conducting a surveillance based on intelligence they

had received from a Source of Information about individuals with no legal status illegally present in the United States. (Docket No. 19). On that day, HSI Agents observed an individual getting inside a vehicle. Upon approaching him, he identified himself as the Defendant. The Defendant stated he was from the Dominican Republic and was illegally in the United States. (Id. at 2). The Defendant had a firearm in a backpack that he was carrying. The HSI agents arrested him and seized one Taurus pistol, model PT940, .40 caliber, serial number SVK02588 loaded with one round of .40mm caliber ammunition inside the chamber and eight rounds of .40mm caliber ammunition inside the magazine attached to the firearm. (Id. at 2-4).

After Defendant was advised of his Miranda rights, he stated, among other things, that he had illegally entered the United States for the first time in 2003, and that he was detained and sent back a few days later. Again, in 2007, he illegally entered Puerto Rico through Cabo Rojo. He was again detained and arrested by law enforcement in 2017, and he was processed and sent to the Dominican Republic. (Id.).

On August 23, 2023, a federal grand jury indicted Defendant with the charge of knowingly possessing a firearm while knowing his status as a non-citizen[1] illegally and unlawfully in the United

---

[1] The Court will use the term "non-citizen" and "undocumented non-citizen" throughout this Opinion. Both terms should be understood to have the same

**Crim. No. 23-311 (GMM)**
Page 3

States in violation of 18 U.S.C. § 922(g)(5) and 924(a)(8). (Docket No. 1).

On November 3, 2023, Defendant filed his Motion to Dismiss the Indictment on Second Amendment grounds, relying on the Supreme Court decision in New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022). (Docket No. 15). Defendant argues that, as a person who has lived in Puerto Rico for more than a year, the Second Amendment of the U.S. Constitution protects his right to bear arms because he "is a member of "the people" as contemplated by the Constitution". U.S. Const. amend. II. He adds "that the term 'Person' and 'Persons' encompassed a broader class of human individuals than just 'Citizen[s]'". (Id. at 3-4 and 6). Furthermore, Defendant contends that Section 922(g)(5) is unconstitutional because there is no longstanding tradition of firearms regulation applying to non-citizens. (Id. at 7-11).

On November 27, 2023, the Government filed the *United States' Response in Opposition to Defendant's Motion to Dismiss the Indictment*. (Docket No. 19). The Government argues that the Defendant "as an undocumented immigrant is not part of "the people" to whom the Second Amendment applies". (Id. at 5). It states that the Supreme Court has repeatedly framed the scope of the Second Amendment as protecting the rights of "citizens" who are "law-

---

meaning as that established in 8 U.S.C. § 1101(a)(3) which states that "[t]he term "alien" means any person not a citizen or national of the United States".

abiding." The Government emphasizes that Defendant possesses neither of these classifications.

Citing Bruen; District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008); and McDonald v. City of Chicago, 561 U.S. 742, 767-68, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), the Government argues that undocumented non-citizens are not among "the people" or "political community" to whom the Second Amendment applies. (Docket No. 19 at 5-12). In addition, it posits that the historical record supports the conclusion that at the time of its ratification, the Second Amendment was understood only to extend the right to bear arms to citizens. (Id. at 12-19). To that extent, the Government argues that "§ 922(g)(5)'s prohibition on the possession of firearms by undocumented immigrants is consistent with and analogous to the United States' historical practice of denying the right to possess firearms by those deemed outside the political community". (Id. at 19).

## II.  APPLICABLE LAW AND ANALYSIS

A.  Legal Standard

A federal court can exercise its supervisory power and supplant a grand jury's "fundamental role" by dismissing an indictment only in "extremely limited circumstances." Whitehouse v. U.S. Dist. Ct. for Dist. of R.I., 53 F.3d 1349, 1360 (1st Cir. 1995) (*citing* Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988)). Defendants may not challenge the government's

evidence, only the facial validity of the indictment. United States v. Guerrier, 669 F.3d 1, 3-4 (1st Cir. 2011) (*citing* United States v. Eirby, 262 F.3d 31, 37-38 (1st Cir. 2001)).

Nonetheless, Federal Rule of Criminal Procedure 12(b)(1) allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). To that extent, the First Circuit has held that a district court may consider pretrial motions to dismiss an indictment "where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts." United States v. Musso, 914 F.3d 26, 30 (1st Cir. 2019). Also, a defendant may seek the dismissal of an indictment on the grounds that the statute authorizing the charges is unconstitutional. *See*, *e.g.*, United States v. Carter, 752 F.3d 8, 12 (1st Cir. 2014) (considering a defendant's motion to dismiss an indictment raising a constitutional challenge under § 922(g)(9)). Such challenge may be to the constitutionality of a statute facially or as-applied. To succeed on a facial attack, the moving party must demonstrate that "no application of the statute would be constitutional." Sabri v. United States, 541 U.S. 600, 609 (2004). See also Hightower v. City of Boston, 693 F.3d 61, 77-78 (1st Cir. 2012) (*quoting* United States v. Stevens, 559 U.S. 460, 472, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010)) (noting that to be facially unconstitutional it must

be shown "that the statute lacks any 'plainly legitimate sweep.'"). Conversely, "an as-applied challenge is 'based on a developed factual record and the application of a statute to a specific person[.]'" Educ. Media Co. at Va. Tech, Inc. v. Insley, 731 F.3d 291, 298 n. 5 (4th Cir.2013) (internal quotations omitted).

B. The Second Amendment

The Second Amendment establishes that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In Heller, the Supreme Court held that the Second Amendment protects "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." 554 U.S. 570 (2008). In McDonald, the Supreme Court held that the Fourteenth Amendment makes the Second Amendment right to keep and bear arms for the purpose of self-defense applicable to the states. 561 U.S. 742, 778(2010). Recently, the Supreme Court held "consistent with Heller and McDonald, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." Bruen, 142 S. Ct. at 2122.

Prior to Bruen, courts of appeals had "coalesced around a 'two-step' framework" when assessing Second Amendment claims, combining a historical analysis with a means-end scrutiny test. Id. at 2125. But, in Bruen, the High Court concluded the two-step approach was "one step too many." 142 S. Ct. at 2127. In its place,

the Supreme Court articulated a new standard to guide courts' analyses in such cases:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 2129-30. Pursuant to Bruen, then, the Court must first consider whether the Second Amendment's plain text covers the conduct proscribed by the statute. *See* Bruen, 142 S.Ct. at 2129—30.

The criminal statute at issue here states that "[i]t shall be unlawful for any person ... who, being an alien [who] is illegally or unlawfully in the United States to ... possess ... any firearm or ammunition." 18 U.S.C. § 922(g)(5).

1. Plain Text of the Second Amendment

The Defendant argues that he is a member of "the people" because he has resided in the United States for over a year, is in a relationship with a legal permanent resident, and has been gainfully employed in the United States. On the other hand, the Government contends that caselaw and the historical understanding of the right to bear arms demonstrate that this right only belongs to law-abiding citizens and not undocumented non-citizens.

While the Supreme Court has not yet explicitly defined the scope of "the people" to whom the Second Amendment applies,[2] this Court deems it unnecessary to delve into this question.[3] The second step of the Bruen inquiry effectively resolves the presented issue, given that "it appears that every court that has considered the constitutionality of § 922(g)(5)(A) under *Bruen* has upheld it as constitutional." United States v. Sing-Ledezma, 2023 WL 8587869, at *18 (W.D. Tex. Dec. 11, 2023). *See also* United States v. Pierret-Mercedes, 2023 WL 2957728 (D.P.R. Apr. 14, 2023); United States v. Trinidad-Nova, 2023 WL 3071412, (D.P.R. Apr. 25, 2023); United States v. Vizcaino-Peguero, 2023 WL 3194522, (D.P.R. Apr. 28, 2023).

2. Bruen's 'Historical Tradition' Test

Under Bruen, the Government bears the burden of demonstrating that firearm restrictions of the type at issue in this case are "consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2135. The Government can satisfy the test under Bruen by identifying historical analogs to a challenged

---

[2] *See* United States v. Sitladeen, 64 F.4th 978, 984 (8th Cir. 2023) (*noting* that Bruen left undefined "the people" to whom Second Amendment rights extend).
[3] At least four circuit courts have assumed, without deciding, that "the people" includes undocumented non-citizens. *See* United States v. Perez, 6 F.4th 448, 450 (2d Cir. 2021), cert. denied, --- U.S. ----, 142 S. Ct. 1133, 212 L.Ed.2d 20 (2022); United States v. Torres, 911 F.3d 1253, 1257 (9th Cir. 2019); United States v. Jimenez-Shilon, 34 F.4th 1042, 1045 (11th Cir. 2022); United States v. Huitron-Guizar, 678 F.3d 1164, 1169 (10th Cir. 2012)("We think we can avoid the constitutional question by assuming, for purposes of this case, that the Second Amendment, as a 'right of the people,' could very well include, in the absence of a statute restricting such a right, at least some aliens unlawfully here—and still easily find § 922(g)(5) constitutional.").

contemporary regulation. 142 S. Ct. at 2132. Courts may then "determin[e] whether a historical regulation is a proper analogue for a distinctly modern firearm regulation" by assessing "whether the two regulations are 'relevantly similar.'" Id. This inquiry examines "how and why the regulations burden a law-abiding citizen's right to armed self-defense" and "whether that burden is comparably justified." Id. at 2133.

The Government argues that before, during, and after the American revolution there were analogous laws to disarm "nonmembers of the political community." (Docket No. 19 at 13.) It cites examples from Massachusetts and Virginia that forbade the arming of Native Americans. In addition, the Government highlights that several colonial governments disarmed persons who refused to "swear an oath of allegiance to the state or the United States." (Id. at 10 *quoting* Saul Cornell & Nathan DeDino, A Well Regulated Right: The Early American Origins of Gun Control, 73 Fordham L. Rev. 487, 506 (2004)). In addition, during the American Revolution, legislatures disarmed those who either "refused to swear their "allegiance and fidelity" to the state","who defamed resolutions of the Continental Congress," or "[who] were unwilling to abide by ... legal norms." Range v. Atty Gen., 69 F.4th 96, 125 (3rd Cir. 2023) (Judge Krause, dissenting).

"[A]nalogical reasoning requires only that the government identify a well-established and representative historical

analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster.". Bruen, 142 S. Ct. at 2133. The Court, like its sister courts before it, finds that the Government has successfully identified colonial era regulations that are functional analogs to Section 922(g)(5). *See*, e.g., United States v. Pierret-Mercedes, 2023 WL 2957728, at *5; United States v. Leveille, --- F.Supp.3d ----, ----, 2023 WL 2386266, at *4-5 (D.N.M. Mar. 7, 2023); United States v. DaSilva, 2022 WL 17242870, at *10 (M.D. Pa. Nov. 23, 2022).

Like the Leveille Court, we find that colonial era regulations, like Section 922(g)(5), amounted to a total prohibition of firearm access to non-citizens illegally present in the United States because "in the view of the legislature, providing firearms to those who have not demonstrated allegiance to this nation might put weapons in the hands of those who would do the nation harm." Leveille, 2023 WL 2386266, at *4. "A history of laws restricting firearm ownership for individuals who refuse to swear allegiance to the United States is analogous to laws directed at undocumented immigrants —not perfectly so, because many undocumented immigrants do not so much refuse as lack any legitimate opportunity to swear such an oath, but analogous nonetheless." Id. Despite Defendant's arguments, the Government has met its burden by citing various analogous historical

restrictions enacted before, during, and after the American Revolution that disarmed individuals outside of the political community. *See* DaSilva, 2022 WL 17242870, at *12 ("[A] substantial historical and traditional basis from the pre-Founding Era and Founding Era exists which provides well-established and representative historical analogues to § 922(g)(5) prohibiting an illegal alien from possessing a firearm and ammunition."); United States v. Vizcaino-Peguero, --- F.Supp.3d ----, 2023 WL 3194522 (D.P.R. Apr. 28, 2023); United States v. Trinidad-Nova, --- F.Supp.3d ----, 2023 WL 3071412 (D.P.R. April 25, 2023).

Thus, by analogy, the Court finds that the historical restrictions on individuals who did not swear an oath of allegiance to the United States are sufficiently similar to Section 922(g)(5) to uphold the law as it exists today. Ultimately, the Government has identified historical limitations on non-citizens' right to bear arms, justifying its regulation. Since the Government meets its burden under the second prong of the Bruen test, Count One of Defendant's indictment under Section 922(g)(5) does not facially violate the Second Amendment.[4]

---

[4] Although Defendant moves to dismiss the Indictment on the basis that 18 U.S.C. § 922(g)(5) is "facially unconstitutional", the Court additionally concludes that an as-applied challenge also lacks merit. Irrespective of the Defendant's family ties and purported employment, establishing a connection to the United States, essential for Second Amendment protection, can only be attained through the formal act of swearing an oath of allegiance to this country. *See* Leveille, 2023 WL 2386266, at *4. Accordingly, the Court concludes that Section 922(g)(5) is not unconstitutional as applied to him.

### III. CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion to Dismiss.

IT IS SO ORDERED.

In San Juan, Puerto Rico, January 8, 2024

>                             s/Gina R. Méndez-Miró
>                             GINA R. MÉNDEZ-MIRÓ
>                             UNITED STATES DISTRICT JUDGE